IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br> Plaintiff, <br> vs. <br> ALMA IDALIA ESPINOZA, <br> Defendant. | No. CR 05-00998-TUC-FRZ (BPV) <br><br> **REPORT AND RECOMMENDATION** |

Alma Idalia Espinoza was indicted on May 18, 2005, for conspiracy and possession with intent to distribute 66 kilograms of marijuana. On June 9, 2005, Alma Espinoza filed a Motion to Dismiss for Lack of Probable Cause. On June 24, 2005, the Government filed its Opposition. The matter came for hearing on July 11, 2005. At that hearing, the Court determined the issue was not suppression, but rather sufficiency of evidence in the nature of a pretrial motion for judgment of acquittal. The Court directed the Government to produce the Grand Jury transcripts and that a supplemental motion and response be filed. These matters came for hearing Monday, October 24, 2005.

**Facts**

The Government called two witnesses: Border Patrol Agents Rolando Mendez and Wayne Millen. The Defendant called DEA Special Agent Michael Garcia.

Facts

On April 19, 2005, the United States Border Patrol was operating a temporary checkpoint on State Highway 80 North of Tombstone, Arizona. Border Patrol Agent

1 Rolando Mendez was at the primary station of the checkpoint. Border Patrol Agent
2 Wayne B. Millen was Mendez's back-up agent.

3   At about 2:15 p.m., Agent Mendez observed a Honda Civic automobile occupied
4 by two women approach the checkpoint. Mendez thought it was unusual the vehicle
5 had stalled twice and that the passengers declared United States citizenship without
6 being asked. As a result, Mendez referred the Honda Civic and its occupants to a
7 secondary inspection. Agent Millen moved into the primary checkpoint position.

8   Millen saw a white pickup truck approach his position in primary. This vehicle
9 had been immediately behind the Honda Civic. Shortly after the Honda Civic was
10 moved to secondary inspection, the Honda Civic's trunk was opened and bundles of
11 marijuana were visible to all including Millen and the driver of the white pickup.
12 Millen noted that the driver was "fixated" with the events occurring at secondary and
13 Millen asked the driver (the Defendant in this case, Espinoza) "What are you looking
14 at?"

15   The Defendant responded: "That's my sister" and either "I can't believe they're
16 doing this," or "I can't believe this is happening."

17   Border Patrol agents have an investigative checkpoint policy that once
18 contraband is found in a vehicle, the following vehicle will also be sent to secondary.
19 The reason for this is that the agents believe that sometimes the two vehicles are
20 associated with each other in criminal conduct and that the second vehicle may contain
21 more contraband than the first vehicle.

22   Accordingly, Espinoza was then referred to secondary. No contraband was
23 visible to the agents. A records check of the vehicle resulted in a determination that the
24 truck belonged to Defendant Espinoza's sister, the driver of the Honda Civic. Thirty-
25 five minutes after the referral to secondary, a Border Patrol K-9 unit responded to the
26 checkpoint. No contraband was discovered or detected by the K-9 unit.

27
28

1 All three women were arrested. The two women, if they made any statements 2 post-Miranda, did not implicate Espinoza in the drug charges. The Defendant Espinoza, 3 post-Miranda, denied any knowledge or involvement in the drug conspiracy.

4 Regrettably, and for reasons which, in retrospect, are not satisfactory to this 5 Court, this Court accepted the complaint against Espinoza and conducted an initial 6 appearance. This initial appearance facilitated the process that culminated in the 7 indictment presently at issue before the Court.

8 This matter came before the Grand Jury on May 18, 2005. The Grand Jury 9 presentation was an abbreviated version of the facts set forth above with additional 10 information that Espinoza was traveling with the two women in the Honda Civic and 11 that they resided at the same location.

12 One Grand Juror asked if any drugs were found in Espinoza's vehicle. DEA 13 agent Michael Garcia informed the Grand Jury that no drugs were found. A Grand 14 Juror stated: "In terms of the person in the pick-up truck..." At this point, the presenting 15 prosecutor, Melissa Mendes, interrupted the Grand Juror before the Juror completed his 16 statement or question, stating that "That is a legal question." Apparently Ms. Mendes 17 then physically signaled for Agent Garcia to leave because a Grand Juror said "Does 18 he have to leave?" Ms. Mendes replied "Just for a second, no problem. We are trying 19 to expedite time."

20 Thereafter, the following occurred:

21 GRAND JUROR: Legally, I mean, being related or any of that, what is the legality of all of it? Did she say anything about knowing the drugs were there? Even though they are related, she might not have known.

26 MS. MENDES: That's a more factual question. In terms of the law, if you are with someone doing that

- 3 -

>you don't know, mere presence alone is not enough. There has to be knowledge. Bear in mind additionally, there are two counts. Part of the charge is not only possession, but conspiracy to possess, intent to distribute. It goes to the facts of the case when you believe the Government has shown the individuals are tied in together. You heard the testimony about how close they were and what was going on. If you would like to ask any further questions of him, let me know. I'll be happy to do that. Are there any factual questions of the witness? I can bring him back in if you want to, otherwise, can I proceed with the next case?

(Transcript of Grand Jury Proceedings, Page 6.)

The disturbing conclusion that can be drawn from this exchange is that Ms. Mendes, clearly anticipating the agent was about to be asked about Ms. Espinoza's actual knowledge of the marijuana, excused the agent, in the middle of a question, over the juror's protests no less, in order to avoid receiving a negative answer to the question. Then, in a move worthy of Orwellian doublespeak, Ms. Mendes, after dismissing it as a legal question in order to excuse the agent, acknowledged herself that it was a factual question, and, instead of calling the agent back in, makes a statement to the jurors that was obfuscating and misleading and avoided in its entirety the factual implications of the juror's question. [1]

## Discussion

---

[1] Regarding this type of behavior, from a United States Attorney, as Mammy told Rhett Butler in Gone With the Wind, "It ain't fittin'...it ain't fittin'. It jes' ain't fittin'.......It ain't fittin'."

- 4 -

1    The Defendant and Government agree that "if there is more than a mere scintilla
2 of evidence" presented to the Grand Jury that an Indictment may not be dismissed. The
3 Defendant cites *United States v. Vargas Rios*, 607 F.2d 391, 399 (9th Cir. 1978) as
4 acknowledging the dismissibility of an indictment for a complete absence of evidence.

5    In *Berger v. United States*, 55 S.Ct. 629, 633 (1935), the Supreme Court stated:

> The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilty shall not escape or innocence suffer. He may prosecute with earnestness and vigor— indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.

15    The issue before the Court is whether a mere scintilla of evidence supports an
16 indictment notwithstanding the fact that the prosecutor has withheld critical evidence
17 from the Grand Jury as to Defendant Espinoza's denial of knowledge[2]. The evidence

---

[2]    The Court recognizes that the Supreme Court has held there is no duty to present exculpatory evidence to the Grand Jury. *See United States v. Williams*, 504 U.S. 36, 52 (1992). Despite the temptation, it is not on these grounds that the Court dismisses. A note, however, on the prosecutor's ethical duty in this instance is called for.

   Justice Stevens, writing for the dissent in Williams, joined by Justices Blackmun, O'Connor and Thomas, however, recognized that the prosecutor's duty to protect the fundamental fairness of judicial proceedings assumes special importance when he or she is presenting evidence to a grand jury. "It blinks reality to say that the grand jury can adequately perform this important historic role if it is intentionally misled by the prosecutor-- on whose knowledge of the law and facts of the

- 5 -

consists of 1) Three women traveling together in two vehicles; 2) One vehicle, not the Defendant's, contains marijuana; 3) Two of the women are sisters and reside in the same location.

This Court concludes that no such result should be permitted, sanctioned, or condoned. It is the recommendation of this Court that the Defendant's Motion to Dismiss (Document # 41) as to Alma Idalia Espinoza and that the indictment herein be dismissed with prejudice. In the alternative, the Court recommends that the matter be remanded to the Grand Jury with instructions to the Grand Jury that the Defendant denied any knowledge of the marijuana in her sister's vehicle.

Pursuant to Title 28 U.S.C. § 636(b), any party may serve and file written objections within 10 days of being served with a copy of this Report and Recommendation. If objections are not timely filed, they may be deemed waived. If objections are filed, the parties should use the following case number: CR 05-00998-TUC-FRZ

DATED this 25th day of October, 2005.

_____
Bernardo P. Velasco
United States Magistrate Judge

---

underlying criminal investigation the jurors will, of necessity, rely." *Id*. at 62, 68 (dissent).

Furthermore, even after the *Williams* decision, the American Bar Association asserts that there is an ethical obligation on a prosecutor to disclose exculpatory evidence: "No prosecutor should knowingly fail to disclose to the grand jury evidence which tends to negate guilt or mitigate the offense." ABA Standards for Criminal Justice, § 3-3.6(b).